**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Geovani Barrios Delgado, | No. CV-26-01460-PHX-AMM (JZB) |
| Petitioner, | **REPORT AND RECOMMENDATION** |
| v. | |
| Unknown Rokosky, | |
| Respondent. | |

**TO THE HONORABLE ANGELA M. MARTINEZ, UNITED STATES DISTRICT JUDGE**:

Pending before the Court is Petitioner's "Petition Under 28 U.S.C. § 2241 for a Writ of Habeas Corpus By a Person in Federal Custody."[1] (Doc. 1.)

**I.    SUMMARY OF CONCLUSIONS.**

Petitioner is subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(2) by the Department of Homeland Security ("DHS") Immigration and Customs Enforcement ("ICE") and has been detained by DHS since July 28, 2025. (Doc. 1 at 16.) On November 12, 2025, an Immigration Judge ("IJ") denied Petitioner's asylum application and ordered that Petitioner be removed. (*Id.* at 1.) Petitioner appealed the decision to the Board of Immigration Appeals ("BIA") on November 28, 2025. (Doc. 1 at 2.) His appeal remains pending. (*Id.*); (doc. 7 at 1.)

Considering Petitioner's current nine-month detention and the liberty interest at

---

[1]    This action was referred to this Court "for further proceedings and a report and recommendation". (Doc. 3 at 3.)

stake, the Court concludes that Petitioner's continued detention offends due process as applied in the specific circumstances of this action. Therefore, the Court **recommends** the Petition be **granted** insofar as Petitioner requests an individualized bond hearing. Furthermore, the Court recommends that, at the bond hearing, the government bear the burden of proving Petitioner is a danger or flight risk by clear and convincing evidence.

**II.    BACKGROUND.**

Petitioner is a native and citizen of Cuba. (Doc. 1 at 11.) Petitioner first entered the U.S. in August of 1995. (*Id.* at 14.) In 2003, Petitioner was ordered to be removed from the U.S., but his removal could not be completed at that time as "Cuba did[ not] accept [him]." (*Id.* at 15.) In October of 2007, Petitioner voluntarily self-deported when he departed the U.S. for Mexico. (*Id.*)

Between arriving in the U.S. in 1995 and departing the country in 2007, Petitioner was indicted and convicted for several crimes. (*Id.* at 14–15.) Specifically, as it relates to the instant action, a district court issued a warrant for Petitioner's arrest for failure to appear in violation of 18 U.S.C. § 3148(a), (b), and (c) on November 8, 2007. (*Id.* at 15.) Petitioner had departed the U.S. before the arrest warrant was issued. (*Id.*)

On December 27, 2023, Petitioner entered the United States. (*Id.* at 16.) On December 27, 2023, Petitioner was committed to the United States Bureau of Prisons for a term of incarceration. (*Id.*) On or about July 28, 2025, Petitioner was released from prison and transferred DHS custody for removal proceedings. (*Id.* at 16–17). In a Notice to Appear issued upon that date, Petitioner was charged as an "arriving alien" who did not possess valid documentation to enter the U.S. (*Id.* at 11.)

On November 12, 2025, Petitioner was ordered removed from the United States. (*Id.* at 1.) Petitioner appealed the IJ's order of removal to the BIA on November 28, 2025. (*Id.* at 2.) That appeal remains pending. (*Id.*); (doc. 7 at 1.)

On March 2, 2026, Petitioner filed the instant Petition. (Doc. 1.) Although unclear, Petitioner appears to allege that his prolonged detention is unconstitutional. (*Id.* at 5.) On March 4, 2026, the District Court issued a service order requiring Respondents to respond

to the Petition. (Doc. 3.)

On March 25, 2026, Petitioner's filed their Response. (Doc. 7.) In the Response, Respondent asserted the following arguments: (1) "[t]he Warden is the only proper respondent"[2]; (2) that "Petitioner is properly detained under Section 1225(b)(2)(A), not Section 1226(a)"; and (3) that Petitioner's due process claims are foreclosed by the entry fiction doctrine. (*Id.*) On April 20, 2026, Petitioner filed a Reply.[3] (Doc. 8.)

**III. 28 U.S.C. § 2241 WRIT OF HABEAS CORPUS.**

The district court is empowered to issue a writ of habeas corpus where an individual is held "in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3). The language of § 2241 and "the common-law history of the writ" makes clear "that the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475 484 (1973) (noting that the writ of habeas corpus "was early recognized by [the Supreme] Court as a 'great constitutional privilege'") (quoting *Ex parte Bollman*, 8 U.S. (4 Cranch) 75, 95 (1807)); *cf. In re Kaine*, 55 U.S. (14 How.) 103 (1852) (applying the writ of habeas corpus in the immigration context). The Supreme Court has made clear that § 2241 applies to noncitizens[4] challenging their immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

Because Petitioner only challenges his prolonged civil detention, the Court has

[2] It is unclear why Respondent have stated this argument considering Respondent Rokosky is, in fact, the only respondent in this action.

[3] The Court has read, but does not summarize, the reply.

[4] Undersigned shall use the term 'noncitizen' unless a quoted statute or court decision uses the term 'alien.' This usage is congruent with the Ninth Circuit Court of Appeals' precedent, such as *Avilez v. Garland*, which specifically stated:

This opinion uses the term noncitizen unless quoting language from the immigration statutes or past opinions containing the term alien. There are two reasons behind this choice. First, use of the term noncitizen has become a common practice of the Supreme Court[.] Second, even if that were not the case, careful writers avoid language that reasonable readers might find offensive or distracting—unless the biased language is central to the meaning of the writing. The word alien can suggest "strange," "different," "repugnant," "hostile," and "opposed," . . . while the word noncitizen, which is synonymous, . . . avoids such connotations. Thus, noncitizen seems the better choice.

*Avilez v. Garland*, 69 F.4th 525, 527 n.1 (9th Cir. 2023) (cleaned up).

jurisdiction to address the instant Petition. *See Lopez-Marroquin v. Barr*, 955 F.3d 759, 759 (9th Cir. 2020) ("[D]istrict courts retain jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration detention that are sufficiently independent of the merits of the removal order[.]").

**IV.   DISCUSSION**.

**A. Statutory Basis for Petitioner's Detention**.

"A noncitizen's place within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." *Avilez v. Garland*, 69 F.4th 525, 529 (9th Cir. 2023) (cleaned up). Petitioner has not alleged what provision he is currently held under. (Doc. 1.) However, he has noted that he has had a hearing regarding asylum before an IJ. (*Id.* at 1); (doc. 7 at 1.) Respondent asserts that Petitioner is detained pursuant to 8 U.S.C. § 1225(b)(2). (Doc. 7 at 2.) Based upon undersigned's independent review of the record, the Court finds that Petitioner is currently detained pursuant to 8 U.S.C. § 1225(b)(2).

**B. Due Process**.

The Court turns to Petitioner's due process claim. The Court's due process analysis is separated into two steps: "[F]irst[, the Court] ask[s] whether there exists a liberty or property interest of which a person has been deprived, and if so[, the Court] ask[s] whether the procedures followed by the [government] were constitutionally sufficient." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011).

***1. Liberty Interest***.

"A liberty interest may arise from the Constitution itself[5] . . . or it may arise from an expectation or interest created by state laws or policies." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) (citations omitted). If a liberty interest is found, the Court then determines whether the administrative procedures are sufficient considering the "particular situation."[6]

---

[5]    "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas*, 533 U.S. at 690.
[6]    The Court notes that due process is a flexible concept. This, however, "does not

- 4 -

*Mathews v. Eldridge*, 424 U.S. 319, 334 (1976) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)).

Here, Respondent asserts that Petitioner does not have a liberty interest in remaining outside of immigration custody because he does not have a cognizable liberty interest in humanitarian parole. (Doc. 7 at 5–6) (citing *Wong v. Immigr. and Naturalization Serv.*, 373 F.3d 952 (9th Cir. 2004). Additionally, Respondent contends that the entry fiction doctrine limits Petitioner's due process liberty interests to those procedures created by statute. (Doc. 7 at 2–5.) The Court disagrees with Respondent's reliance upon *Wong* and the entry fiction doctrine in the instant action.

Beginning with *Wong*, the Court notes that the case is inapposite to the situation at hand. In *Wong*, the Ninth Circuit Court of Appeals addressed whether a noncitizen has a liberty interest in temporary parole. *See Wong*, 373 F.3d at 967. The court found that "[t]he INA does not create any liberty interest *in temporary parole* that is protected by the Fifth Amendment." *Id.* at 968 (emphasis added). "Rather, the statute makes clear that whether and for how long temporary parole is granted are matters entirely within the discretion of the Attorney General." *Id.*

Pursuant to *Wong*, if Petitioner were asserting a liberty interest in *temporary parole*, her claim would be non-cognizable. *See id.* (emphasis added). However, Petitioner is not asserting a liberty interest in temporary parole. Rather, Petitioner asserts a liberty interest in being free from prolonged civil confinement. Therefore, *Wong* is inapplicable to the instant matter.

Next, the Court does not find that the entry fiction doctrine forecloses Petitioner's due process claim as to his present detention. The entry fiction doctrine asserted by Respondents is based upon the "distinction between those aliens who have come to our shores seeking admission, such as petitioner, and those who are within the United States after an entry, irrespective of its legality." *Leng May Ma v. Barber*, 357 U.S. 185, 187

_____

mean that judges are at large to apply it to any and all relationships. Its flexibility is in its scope once it has been determined that some process is due; it is a recognition that not all situations calling for procedural safeguards call for the same kind of procedure." *Morrissey*, 408 U.S. at 481.

(1958). The Supreme Court has noted that the latter category of noncitizens have "additional rights and privileges not extended to those in the former category who are merely 'on the threshold of initial entry.'" *Id.* (quoting *Shaughnessy v. U.S. ex rel. Mezei*, 345 U.S. 206, 212 (1953)); *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139 (2020) ("Whatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned") (quoting *U.S. ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 544 (1950)). Those noncitizens who are on the "threshold of initial entry" are not considered "to have 'effected an entry[.]'" *Thuraissigiam*, 591 U.S. at 140 (quoting *Zadvydas*, 533 U.S. at 693). Put differently, "[w]hen an alien arrives at a port of entry— for example, an international airport—the alien is on U.S. soil, but the alien is not considered to have entered the country[.]" *Thuraissigiam*, 591 U.S. at 139. Therefore, while a citizen may be physically present within the country, they were "still in theory of law at the boundary line and had gained no foothold in the United States[.]" *Zadvydas*, 533 U.S. at 693 (quoting *Kaplan v. Tod*, 267 U.S. 228, 257–58 (1925)).

This distinction is predicated upon the following "fundamental proposition: 'The power to admit or exclude aliens is a sovereign prerogative.'" *Thuraissigiam*, 591 U.S. at 139 (cleaned up) (quoting *Landon v. Plasencia*, 459 U.S. 21, 32 (1982)). "The Constitution gives 'the political department of the government' plenary authority to decide which aliens to admit, . . . and a concomitant of that power is the power to set the procedures to be followed in determining whether an alien should be admitted." *Thuraissigiam*, 591 U.S. at 139 (quoting *Nishimura Ekiu v. United States*, 142 U.S. 651, 659 (1892)).

Respondent, based upon the foregoing, extrapolate that Petitioner, due to the entry fiction doctrine, "is not entitled to any procedure beyond that hich is prescribed by statute." (Doc. 7 at 5.) In other words, Respondent contends that Petitioner, who has not legally effected an entry but is still within the geographical bounds of the U.S., does not have a cognizable Fifth Amendment liberty interest because: (1) he only has a due process interest in those rights regarding admission that Congress has provided by statute; and (2) Congress only provided for temporary parole at the complete discretion of the attorney general. *See*

(*id.* at 2–6.)

The Court disagrees with Respondents approach. Based on a review of current district court interpretation and a plain reading of Supreme Court precedent, it appears that, outside of the context of admissions, a noncitizen has a liberty interest to be free from civil confinement once their detention has become prolonged.[7]

Undersigned is persuaded by the interpretation of numerous courts, both in this District and its sister districts, that have held the entry fiction applies to the procedural rights of noncitizens regarding *admission*, not *every* procedure occurring in the immigration context—*i.e.*, the entry fiction doctrine is inapplicable to challenges of a petitioner's length of detention. *See D.V.D. v. U.S. Dep't of Homeland Sec.*, No. CV 25-10676-BEM, 2026 WL 521557, at *28–31 (D. Mass. Feb. 25, 2026)[8]; *see also Padilla v. U.S. Immigr. & Customs Enf't*, 704 F. Supp. 3d 1163, 1170–72 (W.D. Wash. 2023). These decisions, their progeny, and similar such decisions in numerous district courts interpreting the entry fiction doctrine, are based on a finding that arriving noncitizens, such as Petitioner, have "only those rights *regarding admission* that Congress has provided by statute."[9] *Thuraissigiam*, 591 U.S. at 140 (emphasis added).

For example, the district court in *D.V.D v. U.S. Dep't of Homeland Sec.* recently

---

[7] Undersigned acknowledges there is an internal split amongst the learned jurists within the District of Arizona on the issue of due process for § 1225(b) petitioners. *Compare Guevara Serrano v. Bondi*, No. CV-26-00110-PHX-DJH, at *7 (D. Ariz. Mar. 9, 2026) (granting immediate release) *with Escalona Plaza v. Rosa*, No. CV-26-00195-PHX-MTL (MTM) (D. Ariz. Mar. 16, 2026) (denying petition for writ of habeas corpus).

[8] While the Court acknowledges that *D.V.D.* is an out-of-circuit decision that is currently stayed by the First Circuit, undersigned is nonetheless persuaded by the analysis contained within *D.V.D.* Furthermore, undersigned does not stand alone within the District of Arizona in relying upon *D.V.D. See Guevara Serrano*, No. CV-26-00110-PHX-DJH, at *3–4.

[9] There is a current split between the learned magistrate judges within the District of Arizona on the entry fiction doctrine. *Compare Balayan v. Unknown Parties*, 2:26-cv-00072-SMB (DMF), at *5–6 (D. Ariz. Feb. 19, 2026) (pending R&R recommending dismissal based on entry fiction doctrine) *and Mozhubaev v. Rosa*, 2:26-cv-00505-DJH (JFM), at *8–9 (D. Ariz. Apr. 10, 2026) (pending R&R recommending dismissal based on entry fiction doctrine) *with Avakian v. Rokosky*, 2:26-cv-00104-SHD (CDB), at *18 n.7 (D. Ariz. Feb. 24, 2026), *report and recommendation adopted*, 2:26-cv-00104-SHD (D. Ariz. Mar. 17, 2026) (finding that the entry fiction doctrine does not preclude an as-applied challenge to length of detention) *and Kaur v. Lyons*, 2:26-cv-00217-PHX-KML (ASB), at *5–7 (D. Ariz. Mar. 24, 2026) *report and recommendation adopted*, 2:26-cv-00217-KML (D. Ariz. Apr. 9, 2026) (finding that the entry fiction doctrine does not preclude an as-applied challenge to length of detention).

illustrated why the entry fiction doctrine does not foreclose Petitioner's as-applied challenge to the length of his detention. In *D.V.D.*, the court noted that the, although the entry fiction doctrine "provide[d] an exception to the otherwise geographic scope of the Due Process Clause," the doctrine only impacted those due process rights "regarding admission." *D.V.D.*, 2026 WL 521557, at \*30 (cleaned up) (quoting *Thuraissigiam*, 591 U.S. at 140). The court proceeded to "distinguish rights regarding admission," which relates to the government's "sovereign authority to admit noncitizens only in cases as it may see fit," with other interests that might be implicated by the Due Process Clause. *D.V.D.*, 2026 WL 521557, at \*30 (cleaned up). Because the *D.V.D.* petitioners neither challenged their orders of removal nor the process resulting in those orders, the government's sovereign prerogative was not implicated. *Id.* at \*30–31 (citing *Johnson v. Guzman Chavez*, 594 U.S. 523, 536 (2021)). Hence, the entry fiction doctrine did not bar the petitioners' non-admissions due process challenges. *Id.* at \*31.

In a truncated fashion, the court in *Padilla* refuted the government's entry fiction argument. There, the court rejected the government's claim that the entry fiction doctrine broadly applied to any due process challenge, noting that such an assertion "is untethered to the claim in *Thuraissigiam* and the [Supreme] Court's reasoning." *Padilla*, 704 F. Supp. 3d at 1171. Rather, the entry fiction doctrine is constrained "only [to] those rights regarding admission that Congress has provided by statute." *Id.* at 1172 (emphasis omitted) (quoting *Thuraissigiam*, 591 U.S. at 140). Hence, where a petitioner "do[es] not challenge the admission process in any way or assert a right to remain in the United States," the entry fiction doctrine does not apply. *Padilla*, 704 F. Supp. 3d at 1172.

//
///
//
///
//
///

- 8 -

To state the matter bluntly, a bond hearing—which may result in release—does not equate admissions. *See Rincon v. Hyde*, 810 F. Supp. 3d 101, 107 (D. Mass. 2025) (noting that, if a petitioner were released following a bond hearing, they "will be subject to the same removal proceedings as before, with no new right to remain"). "Thus, Petitioner does not purport to invoke any 'rights regarding admission.'" [10, 11] *Id.* at 110 (quoting *Thuraissigiam*, 591 U.S. at 140); *D.V.D.*, 2026 WL 521557, at *30 ("It makes sense to distinguish between rights regarding admission and other interests that might be protected by the Due Process Clause.").

Neither *Padilla* nor *D.V.D.* challenge "more than a century of Supreme Court case law confirm[ing] that the proper application of an entry fiction, where otherwise appropriate, is to preserve the Government's authority over the determination of a noncitizen's *admissibility*." *D.V.D.*, 2026 WL 521557, at *30; *Padilla*, 704 F. Supp. 3d at 1171–72. Rather, the decisions, based on a textual analysis of *Thuraissigiam* and other Supreme Court precedent, found that where a party "challenge[s] neither their orders of removal nor any of the processes that produced those orders, their claims do not implicate, nor even relate to, the issue of their admissibility." *D.V.D.*, 2026 WL 521557, at *31; *Padilla*, 704 F. Supp. 3d at 1172 (finding that the class of plaintiffs were not challenging the admissions process nor their right to stay in the country, meaning that the entry fiction

---

[10] *Cf. Counselman v. Hitchcock*, 142 U.S. 547, 565 (1892) ("Legislation cannot detract from the privilege afforded by the Constitution. It would be quite another thing if the Constitution had provided that no person shall be compelled in any criminal case to be a witness against himself, unless it should be provided by statute that criminating evidence extracted from a witness against his will should not be used against him. But a mere act of Congress cannot amend the Constitution, even if it should engraft thereon such a proviso."), *overruled on other grounds*, *Kastigar v. United States*, 406 U.S. 441 (1972).

[11] Respondent's reliance upon the Supreme Court's *Thuraissigiam* and *Mezei* decisions to rebut this conclusion are unavailing. First, the Court in *Thuraissigiam* did not announce that all of a noncitizens' rights were limited to those Congress provided by statute. Rather, the Supreme Court's holding was a limited to "those rights *regarding admission* that Congress has provided by statute." *Thuraissigiam*, 591 U.S. at 140. Furthermore, the noncitizen in question in *Mezei* was determined to "be prejudicial to the public interest for security reasons." *Mezei*, 345 U.S. at 208, 216 ("An exclusion proceeding grounded on danger to the national security, however, presents different considerations; neither the rationale nor the statutory authority [provide] for such release exists."). Respondents do not contend that Petitioner is a national security risk. Additionally, as noted in *Ramirez*, "the statutory scheme underpinning" *Mezei* is "no longer in effect," so it is of limited import in the context of § 1225(b)(1)(B)(ii) noncitizens. *Ramirez*, 2019 WL 11005487, at *5. Hence, *Mezei* is not directly applicable here.

doctrine did not bar their due process claim).

Based on this persuasive statutory interpretation and "the Ninth Circuit's articulation of 'grave doubts' about the constitutionality of 'any statute that allows for arbitrary prolonged detention without any process,'" the Court finds that the entry clause doctrine does not prohibit as-applied challenges to a petitioner's length of detention. *Ramirez v. Sessions*, No. 18-CV-05188-SVK, 2019 WL 11005487, at *6 (N.D. Cal. Jan. 30, 2019) (quoting *Rodriguez v. Marin*, 909 F.3d 252, 256–57 (9th Cir. 2018) ("Arbitrary civil detention is not a feature of our American government. 'Liberty is the norm, and detention prior to trial or without trial is the carefully limited exception.'") (cleaned up) (quoting *United States v. Salerno*, 481 U.S. 739, 755 (1987))).

Most importantly, the Court finds that this holding comports with the Supreme Court's extensive catalog of immigration decisions. The Supreme Court has noted that in American society, "liberty is the norm," which necessitates that civil detention "is the carefully limited exception." *Foucha v. Louisiana*, 504 U.S. 71, 83 (1992) (quoting *Salerno*, 481 U.S. at 755); *Addington v. Texas*, 441 U.S. 418, 425 (1979) ("This Court repeatedly has recognized that civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection."); *cf. Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020) ("The Supreme Court has been unambiguous that executive detention orders, which occur without the procedural protections required in courts of law, call for the most searching review") (citing *Boumediene v. Bush*, 553 U.S. 723, 781–83, 786 (2008)).

This contention is no less valid when considering that Petitioner is not a citizen, *see Yick Wo v. Hopkins*, 118 U.S. 356, 368–69 (1886), because "[t]he Fifth Amendment, as well as the Fourteenth Amendment, protects every one of" the "millions of aliens within the jurisdiction of the United States." *Mathews v. Diaz*, 426 U.S. 67, 77 (1976); *Reno v. Flores*, 507 U.S. 292, 306 (1993) ("It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings.") (citing *The Japanese Immigration Case*, 189 U.S. 86, 100–01 (1903)); *Wong Wing v. United States*, 163 U.S.

228, 238 (1896) ("[I]t must be concluded that all persons within the territory of the United States are entitled to the protection guarantied by th[e Fifth and Sixth Amendments], and that even aliens shall not be . . . be deprived of life, liberty, or property without due process of law.").

"The constitutional sufficiency of [due process] procedures provided in any situation, of course, varies with the circumstances." *Landon*, 459 U.S. at 33–34. Here, it appears that affording Petitioner constitutional due process protections not related to admissions is congruent with binding precedent.[12] In short, the Court finds that the "preservation of petitioner's right to due process does not leave an unprotected spot in the Nation's armor." *Kwong Hai Chew v. Colding*, 344 U.S. 590, 602 (1953). Therefore, the Court declines to follow Respondents' characterization of the entry fiction doctrine.

### 2. *Due Process Rights Regarding Petitioner's Prolonged Detention*.

Courts in this circuit and beyond have grappled over what test should be used to determine whether procedural due process requires relief for a noncitizen held pursuant to § 1225(b). *See Doe v. Andrews*, 1:25-cv-00333-JLT-HBK, at *15–17 (E.D. Cal. Mar. 23, 2026) (applying the 3-factor *Lopez* test); *see also Galkin v. Scott*, No. 2:26-cv-00530-TLF, 2026 U.S. Dist. LEXIS 46838, at *7 (W.D. Wash. Mar. 6, 2026) (applying the 6-part *Banda* test) (citing *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1118 (W.D. Wash. 2019)); *Leonteva v. Noem*, No. 4:26-cv-00043-SEB-KMB, 2026 U.S. Dist. LEXIS 52217, at *22 (S.D. Ind. Mar. 13, 2026) (applying the same 6-factor test, but calling it the *Jamal A* test) (*citing Jamal A. v. Whitaker*, 358 F. Supp. 3d 853, 858–59 (D. Minn. 2019)); *L.S. v. Warden, Otay Mesa Det. Ctr.*, No. 25-cv-3598-LL-BJW, 2026 U.S. Dist. LEXIS 10299, at *11–15 (S.D. Cal. Jan. 20, 2026) (applying the 3-part *Mathews v. Eldridge* test) (citing *Mathews*, 424 U.S. at 335).

Out of the abovementioned tests, the Court finds the *Banda* test the most applicable

---

[12] Of course, this finding "does not lead to the further conclusion that all aliens are entitled to enjoy all the advantages of citizenship." *Id.* at 78. The Constitution clearly provides Congress a "broad power over naturalization and immigration," including the power to "make[] rules that would be unacceptable if applied to citizens." *Id.* at 80–81. The instant findings do not subvert these notions.

to the situation at hand. Under the *Banda* test, the Court considers the following factors:

> (1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal.

*Banda*, 385 F. Supp. 3d at 1118.

The Court finds the *Banda* test more suitable than the *Mathews*[13] and *Lopez*[14] tests. Regarding the *Mathews* test, the Court concurs with other district courts that have found that "while the *Mathews* factors may be well-suited to determining whether due process requires a second bond hearing, they are not particularly dispositive of whether prolonged mandatory detention has become unreasonable in a particular case." *Lopez*, 631 F. Supp. 3d at 879. Put differently, the *Mathews* test is apt where the question is whether an administrative procedure provided is "constitutionally sufficient," but "[i]t does not resolve the more fundamental issue of whether any procedure—such as a bond hearing—must be provided."[15] *Banda*, 385 F. Supp. 3d at 1106–07.

---

[13] Under the *Mathews* test, the Court considers:
First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.
*Mathews*, 424 U.S. at 335.

[14] Under the *Lopez* test, "the Court will look to the total length of detention to date, the likely duration of future detention, and the delays in the removal proceedings caused by the petitioner and the government." *Lopez*, 631 F. Supp. 3d at 879. The Court notes that this test "concern[s] due process challenge[s] to mandatory detention under § 1226(c), [and] are, in essence, a truncated version of the factors enumerated in *Banda*[.]" *Andrews*, 1:25-cv-00333-JLT-HBK, at *14. Because the six-factor *Banda* test is more detailed than *Lopez* and is better suited for noncitizens held pursuant to § 1225(b), the Court accordingly elects to apply it.

[15] In any event, the outcome applying *Mathews* and *Banda* would be the same—*i.e.*, Petitioner would be entitled to an individual bond hearing. Applying the first *Mathews* element, undersigned finds that Petitioner has a strong private interest in his liberty from prolonged civil detention. *See Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) ("As to the first factor, the private interest at issue here is 'fundamental': freedom from imprisonment is at the 'core of the liberty protected by the Due Process Clause.'") (quoting *Foucha*, 504 U.S. at 80).
Turning to the second element, considering the prolonged nature of Petitioner's detention, the Court finds a large risk of erroneous deprivation in the absence of an individualized bond hearing. *See Rodriguez v. Robbins*, 715 F.3d 1127, 1144 (9th Cir.

- 12 -

>        *i.        Length of Detention.*

The first *Banda* factor is the length of detention, "which is the most important factor." *Banda*, 385 F. Supp. 3d at 1118. "It is important to bear in mind the context: The detention that is being examined here is the detention of a human being who has never been found to pose a danger to the community or to be likely to flee if released." *Id.* (quoting *Jamal A.*, 358 F. Supp. 3d at 859).

Petitioner has been held in DHS custody for over nine months. Under the first *Banda* factor, where a petitioner's current detention exceeds a six-month threshold, their "detentions become less and less reasonable." *Haidari v. Immigr. & Customs Enf't Field Off. Dir.*, No. 2:26-cv-00039-TL, 2026 U.S. Dist. LEXIS 56882, at *8 (W.D. Wash. Mar. 18, 2026) (quoting *L.B.O.M. v. Hermosillo*, No. 2:25-cv-02695-GJL, 2026 U.S. Dist. LEXIS 21291, at *8 (W.D. Wash. Feb. 2, 2026).

Petitioner has been detained for over nine months. This is beyond the six-month threshold, and within the length of confinement other courts have found to be prolonged. *See, e.g.*, *Liang Ding v. Noem*, No. 1:26-cv-01217-DJC-SCR, 2026 U.S. Dist. LEXIS 58212, at *3–4 (E.D. Cal. Mar. 19, 2026) (noting that an eight-month detention is sufficiently prolonged to warrant granting relief); *Amado v. U.S. Dep't of Just.*, No. 25-cv-

---

2013) (noting that the discretionary parole system envisioned under the Immigration and Naturalization Act is insufficient "to overcome the constitutional concerns raised by prolonged mandatory detention"). Hence, an individualized bond hearing would greatly mitigate the risk of a continued constitutional violation.

Finally, regarding the third *Mathews* factor, the government interest in detaining Petitioner without an individualized bond hearing is low. First, "[p]roviding petitioner with a bond hearing would not impede respondents' interest in effecting removal or protecting the public, as the purpose of the bond hearing is to determine whether petitioner is a danger or flight risk." *Jensen v. Garland*, No. 5:21-CV-01195-CAS (AFM), 2023 WL 3246522, at *6 (C.D. Cal. May 3, 2023). Second, the fiscal burden of providing an individualized bond hearing is low. *See Abduraimov v. Andrews*, No. 1:25-CV-00843-EPG-HC, 2025 WL 2912307, at *7 (E.D. Cal. Oct. 14, 2025) ("Courts generally have found that the cost of providing a bond hearing is relatively minimal, and there is nothing in the record before this Court demonstrating that providing Petitioner with a bond hearing would be fiscally or administratively burdensome."); *cf. Hernandez v. Sessions*, 872 F.3d 976, 996 (9th Cir. 2017) (noting that "[t]he costs to the public of immigration detention are 'staggering': $158 each day per detainee, amounting to a total daily cost of $6.5 million. Supervised release programs cost much less by comparison: between 17 cents and 17 dollars each day per person"). Therefore, the third factor minimally favors the government. Accordingly, applying the *Mathews* test to Petitioner's nine-month detention, undersigned concludes that due process requires he be provided with an individualized bond hearing.

- 13 -

2687-LL (DDL), 2025 U.S. Dist. LEXIS 217453, at *14 (S.D. Cal. Nov. 4, 2025) ("To date, [p]etitioner has been in detention for approximately thirteen months. Courts have found detention over *seven months* without a bond hearing weighs toward a finding that it is unreasonable.") (emphasis added); *Kadir v. Larose*, No. 25cv1045-LL-MMP, 2025 U.S. Dist. LEXIS 203614, at *13 (S.D. Cal. Oct. 15, 2025) (noting that 13 months without a bond hearing is prolonged); *cf. Banda*, 385 F. Supp. 3d at 1118 ("Petitioner has been in detention for approximately 17 months, which is a very long time."). In light of these decisions, and based upon the facts of the instant action, the Court finds the length of Petitioner's detention favors granting relief.

ii.     *Likely Duration of Future Detention.*

The second factor requires the Court to "consider[] how long the detention is likely to continue absent judicial intervention; in other words, the anticipated duration of all removal proceedings—including administrative and judicial appeals." *Banda*, 385 F. Supp. 3d at 1119 (citation omitted). "When the alien's removal proceedings are unlikely to end soon, this suggests that continued detention without a bond hearing is unreasonable." *Akmal v. Warden of Cal. City Det.*, No. 1:25-CV-01921-DC-DMC-HC, 2026 WL 657606, at *7 (E.D. Cal. Mar. 9, 2026) (quoting *German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 211 (3d Cir. 2020)).

While the length of future detention is uncertain considering Petitioner's appeal to the BIA, the Court finds that the likely duration of future detention is sufficiently lengthy for this factor to favor Petitioner. *See Kadir*, 2025 U.S. Dist. LEXIS 203614, at *8 ("Petitioner's future detention can last several more months or even years during the adjudication of Respondents' appeal to the BIA."); *see also Liang Ding*, 2026 U.S. Dist. LEXIS 58212, at *4 ("[E]ither party may seek Ninth Circuit review of the [BIA's] decision. Therefore, [p]etitioner faces indefinitely prolonged detention while administrative and potentially judicial appeals of his removal order are decided. Thus, this factor weighs in [p]etitioner's favor.").

//

    *iii.*  *Conditions of Detention*.

    The third factor requires the Court to consider the conditions of confinement. *Banda*, 385 F. Supp. 3d at 1119. "The more that the conditions under which the [noncitizen] is being held resemble penal confinement, the stronger his argument that he is entitled to a bond hearing." *Id.* (citation omitted). Petitioner has not provided any facts as to his condition of confinement. (Doc. 1.) Respondents, by virtue of not addressing the *Banda* test, have not addressed the condition of Petitioner's confinement. (Doc. 7.) Hence, the Court finds this factor neutral.

    *iv.*  *Delays in Removal Proceedings*.

    Next, the Court shall analyze the "fourth and fifth [*Banda*] factors—both which consider delays caused by the parties—together." *Maliwat v. Scott*, No. 2:25-CV-00788-TMC, 2025 WL 2256711, at *6 (W.D. Wash. Aug. 7, 2025).

    The fourth factor requires the Court to consider the nature and extent of any delays caused by Petitioner. "Courts should be sensitive to the possibility that dilatory tactics by the removable noncitizen may serve not only to put off the final day of deportation, but also to compel a determination that the noncitizen must be released because of the length of his incarceration." *Banda*, 385 F. Supp. 3d at 1119 (cleaned up).

    In the instant action, Petitioner has appealed the IJ's denial of his asylum claim and order of removal. While it is true that Petitioner has delayed his own removal, the Court does not find that this was a dilatory tactic aimed at extending his detention so he could then seek release. Regardless, based on a review of our sister districts' caselaw, the Court is persuaded that a petitioner "should not be effectively punished through indefinite detention for exercising her right to appeal her removal order." *Yuehui Chen v. Noem*, No. 5:26-CV-00397-SSS-DTB, 2026 WL 425694, at *6 (C.D. Cal. Feb. 13, 2026); *Marroquin Ambriz v. Barr*, 420 F. Supp. 3d 953, 964 (N.D. Cal. 2019) ("But the government's suggestion that Petitioner's choice to appeal adverse rulings weighs against any constitutional claim that he may make regarding his detention during the course of the appeal is untenable, and the Court will not require that a petitioner who pursues his

available legal remedies must forego any challenge to the reasonableness of his detention in the interim.") (cleaned up); *Barraza v. ICE Field Off. Dir.*, No. C23-1271-BHS-MLP, 2023 WL 9600946, at \*6 (W.D. Wash. Dec. 8, 2023), *report and recommendation adopted sub nom. Barraza v. U.S. Immigr. & Customs Enf't Field Off. Dir.*, No. C23-1271 BHS, 2024 WL 518945 (W.D. Wash. Feb. 9, 2024) ("Petitioner is entitled to raise legitimate defenses to removal . . . and such challenges to his removal cannot undermine his claim that detention has become unreasonable.") (citing *Liban M.J. v. Sec. of Dep't of Homeland Sec.*, 367 F. Supp. 3d 959, 965 (D. Minn. 2019)); *Henriquez v. Garland*, No. 5:22-CV-00869-EJD, 2022 WL 2132919, at \*5 (N.D. Cal. June 14, 2022) (finding that delays caused by the petitioner to "develop affirmative relief in the face of his removability . . . . does not deprive him of a constitutional right to due process," especially because "the proceedings have been significantly prolonged for reasons beyond his control."). Hence, the fourth factor minimally favors Respondent.

The fifth factor considers the delays in removal caused by the government. *Banda*, 385 F. Supp. 3d at 1120. "[I]f immigration officials have caused delay, it weighs in favor of finding continued detention unreasonable . . . Continued detention will also appear more unreasonable when the delay in proceedings was caused by the immigration court or other non-ICE government officials." *Galkin*, 2026 U.S. Dist. LEXIS 46838, at \*11 (quoting *Sajous v. Decker*, No. 18-CV-2447 (AJN), 2018 WL 2357266, at \*10–11 (S.D.N.Y. May 23, 2018)). While Petitioner's appeal has caused a delay in his removal, the Court notes that "any 'delay in this case is a product of the BIAs and Ninth Circuit's 'crowded dockets,' which courts typically attribute to the Government—not the Petitioner." *Galkin*, 2026 U.S. Dist. LEXIS 46838, at \*11 (quoting *Djelassi v. Ice Field Off. Dir.*, 434 F. Supp. 3d 917, 923 (W.D. Wash. 2020)). Hence, the fifth factor slightly favors Petitioner.

*v.*     *Likelihood of Removal*.

The final *Banda* factor requires the Court to consider "the likelihood that the final proceedings will culminate in a final order of removal." *Banda*, 385 F. Supp. 3d at 1120 (citation omitted). "[W]here a noncitizen has asserted a good faith challenge to removal,

- 16 -

'the categorical nature of the detention will become increasingly unreasonable.'" *Id.* (quoting *Sajous v. Decker*, No. 18-CV-2447 (AJN), 2018 WL 2357266, at *11 (S.D.N.Y. May 23, 2018)). Based on the current record, "the Court lacks sufficient information to comment on the potential merits of [P]etitioner's pending appeal." *Galkin*, 2026 U.S. Dist. LEXIS 46838, at *12. Therefore, the sixth factor is neutral.

> *vi.*    *Conclusion*.

Considering three of the *Banda* factors favor Petitioner, one factor slightly favors Respondent, and two factors are neutral, the Court concludes that Petitioner's continued detention under § 1225(b)(2) has become unreasonable. Therefore, Petitioner is entitled to relief.

**C. Remedy**.

Where a noncitizen's detention under § 1225(b)(2) has become unreasonable, the proper remedy is an individualized bond hearing before a neutral IJ. *See Galkin*, 2026 U.S. Dist. LEXIS 46838, at *12 (finding that "there is no authority" supporting relief in the form of immediate release, but there is authority supporting relief in the form of a bond hearing) (cleaned up); *see also Lopez*, 631 F. Supp. 3d at 882 ("The Court finds, consistent with other post-*Jennings* cases, that the appropriate remedy is a bond hearing before an immigration judge rather than immediate release."); *Kaur v. Lyons*, 2:26-cv-00217-KML, at *1 (D. Ariz. Apr. 9, 2026) (adopting the magistrate judge's recommendations for a 1225(b)(2) petitioner and granting a bond hearing).

At the bond hearing, Respondent bears the burden of proving that Petitioner is a danger or flight risk by clear and convincing evidence. *Singh v. Holder*, 638 F.3d 1196, 1203–05 (9th Cir. 2011). Additionally, "[i]n the event Petitioner is 'determined not to be a danger to the community and not to be so great a flight risk as to require detention without bond,' the [IJ] should consider Petitioner's financial circumstances and alternative conditions of release." *also Liang Ding*, 2026 U.S. Dist. LEXIS 58212, at *7 (quoting *Hernandez v. Sessions*, 872 F.3d 976, 1000 (9th Cir. 2017)).

//

Accordingly,

**IT IS RECOMMENDED** that Petitioner's Petition Under 28 U.S.C. § 2241 for a Writ of Habeas Corpus By a Person in Federal Custody (doc. 1) be **GRANTED** as to Petitioner's request for an individualized bond hearing.

**IT IS FURTHER RECOMMENDED** that Petitioner be provided an individualized bond hearing within **SEVEN (7) DAYS** if this Report and Recommendation is adopted. This bond hearing shall comply with the procedural requirements set out in *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011). The government shall bear the burden of proving that Petitioner is a danger or flight risk by clear and convincing evidence. Additionally, the IJ should consider Petitioner's financial situation and alternative conditions of release. *Hernandez v. Sessions*, 872 F.3d 976 (9th Cir. 2017). In the alternative, the government may release Petitioner under appropriate conditions of release.

**IT IS FURTHER RECOMMENDED** that Petitioner **SHALL** be provided with adequate notice prior to the hearing.

**IT IS FURTHER RECOMMENDED** that the government shall file a status report with the Court regarding the bond hearing and whether the Petitioner was released within **FOURTEEN (14) DAYS** if this Report and Recommendation is adopted.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment. The Parties shall have 14 days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See* 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 6, 72. Thereafter, the Parties have 14 days within which to file a response to the objections.

Failure to file timely objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the District Court without further review. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure to file timely objections to any factual determinations of the Magistrate Judge may be considered a waiver of a party's right to appellate review of the

findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation. *See* Fed. R. Civ. P. 72.

Dated this 12th day of May, 2026.

_____
Honorable John Z. Boyle
United States Magistrate Judge